IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

|  |  |  |
|---|---|---|
| JENNIFER P. CLARK and LARRY H. CLARK, | : : : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 2:07-CV-0071-RWS |
| v. | : : : | |
| JUDGE JASON J. DEAL, | : : | |
| Defendant. | : | |

## **ORDER**

This case comes before the Court on Defendant's Motion to Dismiss [9] and Plaintiffs' Motion for Default Judgment [10]. Having reviewed the entire record, the Court now enters the following Order.

### **Background**

Plaintiffs, husband and wife, initiated this action on June 22, 2007, alleging that Defendant, a Superior Court Judge in Hall County, Georgia, violated their due process and equal protection rights by refusing to grant Ms. Clark *pro hac vice* status in certain litigation before Judge Deal in which her

AO 72A
(Rev.8/82)

husband is a plaintiff.  (Am. Compl. [5] ¶ 2.)   Plaintiffs also allege that Judge Deal defamed Ms. Clark's character by authoring an Order containing false statements in support of his decision to deny her *pro hac vice* status.  In that Order, Judge Deal wrote:

> Plaintiff filed this suit for damages on October 30, 2003.  Thereafter, Ms. Clark was permitted to appear pro hac vice by Order of the Court dated November 12, 2003.  The court notes that since that time, the proceedings have been marked by combative behavior between the parties as well as repeated delay in progression of discovery, scheduling of mediation and compliance with the Court's instruction.  The parties have been admonished by the undersigned and Judge John E. Girardeau, to whom the case was formerly assigned, through recurring orders of contempt, protective orders and orders compelling discovery or quashing discovery motions.
> Based on the foregoing Order unequivocally revoking Ms. Clark's pro hac vice status, and the Court's review of Ms. Clark's involvement in the above-styled case prior to this Court revoking her permission to appear, [her renewed pro hac vice Application] is hereby DENIED.

(Am. Compl. ¶ 9.)

Finally, Plaintiffs allege that Judge Deal acted improperly by discussing in an *ex parte* conversation with defense counsel whether he should offer Ms. Clark the opportunity to voluntarily withdraw as counsel in exchange for a vacatur of the order denying her *pro hac vice* status.  (Id. ¶¶ 21-23.)   Plaintiffs

seek "the immediate removal" of Judge Deal's Order and compensatory damages in the amount of $5,000,000. (Id. ¶¶ 25-26.)

In lieu of answering Plaintiffs' Complaint, Judge Deal moved to dismiss this action on July 13, 2007. Plaintiffs have since moved for default judgment, contending that Judge Deal has failed to file an answer to Plaintiffs' Complaint. On July 26, 2007, the Court stayed this action pending the resolution of Judge Deal's Motion to Dismiss. (See Order of Jul. 26, 2007 [14].) The Court now turns to address the motions pending before it.

## Discussion

### I.     Plaintiffs' Motion for Default Judgment

As an initial matter, the Court can quickly dispose of Plaintiffs' Motion for Default Judgment because Judge Deal has filed a timely responsive pleading to Plaintiff's Complaint and Amended Complaint.

Rule 12(b) of the Federal Rules of Civil Procedure provides that a defendant may file a motion to dismiss in lieu of answering the plaintiff's complaint. Fed. R. Civ. P. 12(b). Plaintiffs filed their initial Complaint [1] on June 22, 2007, and, before Judge Deal filed a responsive pleading, filed their Amended Complaint [5] as a matter of right on July 2, 2007. Pursuant to Rule

3

15(a), the deadline for Judge Deal's responsive pleading was ten days from the filing of Plaintiffs' Amended Complaint, excluding weekends and the July 4th legal holiday.  See Fed. R. Civ. P. 15(a) ("A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders."); Fed. R. Civ. P. 6(a) (providing time calculations for 10-day deadline).  Thus, Judge Deal's responsive pleading was due on July 17, 2007.  Since Judge Deal filed a Rule 12(b)(6) motion to dismiss on July 13, 2007 [9], Judge Deal filed a timely responsive pleading to Plaintiff's Complaint.  Accordingly, Plaintiffs' Motion for Default Judgment is **DENIED**.

## II.   Judge Deal's Motion to Dismiss

Judge Deal moves to dismiss this action, contending that judicial immunity bars Plaintiffs' claims because they all arise out of the performance of his judicial duties.[1]  For the reasons that follow, the Court agrees.

---

[1] Judge Deal also argues that the instant action is barred by the Rooker-Feldman doctrine, which generally precludes federal courts from reviewing the judgment of state courts.  See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476-82, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S. Ct. 149, 68 L. Ed. 362 (1923).  Because of the Court's disposition below,

4

Federal Rule of Civil Procedure 12(b)(6) empowers the Court to grant a defendant's motion to dismiss when a complaint fails to state a claim upon which relief can be granted. In considering whether to grant or deny such a motion, the Court may look only to the pleadings. Fed. R. Civ. P. 12(b). In addition, the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. Cooper v. Pate, 378 U.S. 546, 546, 84 S. Ct. 1733, 12 L. Ed. 2d 1030 (1964); Conner v. Tate, 130 F. Supp. 2d 1370, 1373 (N.D. Ga. 2001). Thus, a motion to dismiss should be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); see Linder v. Portocarrero, 963 F.2d 332 (11th Cir. 1992).

Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity, unless they acted in the "clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S. Ct. 1099, 55 L. Ed.2d 331 (1978); see also Mireles v. Waco, 502 U.S. 9,

---

the Court does not address whether the Rooker-Feldman doctrine provides an independent bar to Plaintiffs' claims.

9-12, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991).  "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000). Moreover, judicial immunity protects state judges from claims for injunctive relief, "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; see also Esensoy v. McMillan, 2007 WL 257342, *1 n.5 (11th Cir. Jan. 31, 2007) (unpublished decision).

In determining whether an individual was acting within his judicial capacity for purposes of judicial immunity, the Eleventh Circuit has considered the following four factors:

> (1) the precise act complained of is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity.

Dykes v. Hosemann, 776 F.2d 942, 946 (11th Cir. 1985) (citations and quotations omitted).

The decision to grant or deny an out-of-state attorney *pro hac vice* status is quintessentially a judicial act. See Ga. Uniform Superior Court Rule 4.4(B)(1) (providing that Georgia Superior Court judges have authority to grant

6

or deny *pro hac vice* status). Likewise, providing written reasons in a judicial opinion in support of a decision to deny an application for *pro hac vice* status, even if erroneous, malicious, or defamatory, is a judicial act. See Emory v. Peeler, 756 F.2d 1547, 1553-54 (11th Cir. 1985) (holding that allegedly defamatory comments made at the end of trial concerning juror's conduct was a judicial act protected by judicial immunity). Finally, *ex parte* comments to opposing counsel concerning a legal issue over which a judge presided, even if allegedly conspiratorial, constitute a judicial act. See Dykes, 776 F.2d at 946 (finding judicial immunity in § 1983 action alleging that judge conspired with other party to violate plaintiff's federal civil rights); Harper v. Merckle, 638 F.2d 848 (5th Cir. 1981) (stating that "even a judge who is approached as a judge by a party [and conspires with such party] to violate [another party's federal constitutional rights] is properly immune from a damage suit" brought under § 1983).

The acts complained of in Plaintiff's Complaint all concern a normal judicial function, all occurred in chambers in the context of a case pending before Judge Deal, and all arose directly and immediately out of Plaintiffs' legal request to admit Ms. Clark *pro hac vice*. Judge Deal's denial of Ms. Clark's

status, regardless of his stated reasons for doing so, and his alleged discussions with opposing counsel concerning the possibility of allowing Ms. Deal to voluntarily withdraw from the case in exchange for the vacatur of his Order all arose in the context of litigation pending before him.  Id.  Because the Complaint makes clear that Plaintiffs bemoan only those actions Judge Deal undertook in his capacity as a member of the state judiciary, Judge Deal is entitled to judicial immunity.

Plaintiffs nevertheless contend that Judge Deal did not have subject-matter jurisdiction in the underlying case because "Deal made up lies as the basis for a court order."  (Pl.'s Resp. to Def.'s Mot. to Dismiss [12] at 1.)  But, "the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction *over the subject matter before him*."  Stump, 435 U.S. at 356 (emphasis added).  As the Supreme Court has explained, "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge.  A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the *clear absence of all jurisdiction*."  Id. at

8

356-57 (quotations and citations omitted) (emphasis added). Plaintiffs do not allege that Judge Deal was without any jurisdiction over the underlying proceeding before him (which Plaintiffs themselves brought in Superior Court),[2] nor do they dispute Judge Deal's authority under Georgia law to deny Ms. Clark's application for *pro hac vice* status. See Ga. Uniform Superior Court Rule 4.4(B)(1). Thus, Plaintiffs' allegations cannot support the conclusion that there was a "clear absence of all jurisdiction," as is required to surmount the judicial immunity bar. Stump, 435 U.S. at 356; see also Dykes, 776 F.2d at 948 ("Where a judge does not clearly lack all subject-matter jurisdiction, he does not clearly lack all jurisdiction.") (quoting Holloway v. Walker, 765 F.2d 517, 523 (5th Cir. 1985)).

In sum, Plaintiff complains only of judicial acts which occurred in the context of a judicial proceeding over which Judge Deal had subject matter jurisdiction. Judge Deal is entitled to judicial immunity. Accordingly, his Motion to Dismiss is **GRANTED**.

---

[2] Georgia Superior Courts have the authority "to exercise original, exclusive, or concurrent jurisdiction, as the case may be, of all causes, both civil and criminal, granted to them by the Constitution and the laws." O.C.G.A. § 15-6-8.

## Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss [9] is **GRANTED**.  Plaintiff's Motion for Default Judgment [10] is **DENIED**.

**SO ORDERED**, this   17th   day of September, 2007.

*(signature)*
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)